## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

**BRENT LAMBI,**
  *Petitioner/Plaintiff, Pro Se*
  P.O. Box 241028, Omaha, Nebraska 68124

**v.**

UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT
OF JUSTICE; THE DRUG ENFORCEMENT ADMINISTRATION;
THE DEPARTMENT OF HOMELAND SECURITY; THE DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT; THE MISSOURI HOUSING
DEVELOPMENT COMMISSION; THE INTERNAL REVENUE SERVICE;
and ALL FEDERAL AGENCIES, OFFICERS, EMPLOYEES, AGENTS,
AND PERSONS ACTING IN CONCERT THEREWITH,
  *Respondents/Defendants.*

Case No.: 8:26 cv 101

Hon. _____

---

## PETITION FOR EMERGENCY TEMPORARY RESTRAINING ORDER,
## PRELIMINARY INJUNCTION, AND FEDERAL PROTECTIVE ORDER
### AGAINST UNCONSTITUTIONAL TARGETING, HARASSMENT, PROPERTY
### DEPRIVATION, AND CIVIL RIGHTS SUPPRESSION BY FEDERAL
### GOVERNMENT AGENCIES AND THEIR AGENTS

Pursuant to Fed. R. Civ. P. 65; 42 U.S.C. § 1983; 42 U.S.C. § 1985;
Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971);
U.S. Const. Amends. I, IV, V, XIV; and 5 U.S.C. § 702 (APA)

---

### FILED PRO SE BY:
### BRENT LAMBI
*Petitioner, Pro Se*
P.O. Box 241028
Omaha, Nebraska 68124
*Appearing Without Counsel — All Pleadings to be Construed Liberally*

## I.  INTRODUCTION AND NATURE OF THE ACTION

Petitioner Brent Lambi, a private citizen, real estate investor, civic journalist, and pro se litigant residing at P.O. Box 241028, Omaha, Nebraska 68124, respectfully petitions this Court for emergency injunctive relief in the form of a Temporary Restraining Order (TRO), Preliminary Injunction, and Federal Protective Order against the United States of America, its agencies including but not limited to the Department of Justice (DOJ), the Drug Enforcement Administration (DEA), and the Department of Homeland Security (DHS), and all officers, employees, agents, contractors, and persons acting in concert with or at the direction of those agencies.

Petitioner has been subjected to a systematic, ongoing, and coordinated pattern of unlawful government targeting, surveillance, harassment, obstruction of legal proceedings, interference with property rights, and suppression of First Amendment protected speech and civic activity. The purpose and effect of this campaign has been to silence Petitioner's public advocacy, destroy his livelihood, deprive him of property and liberty without due process of law, and to retaliate against him for exercising rights guaranteed by the United States Constitution.

Absent immediate injunctive relief, Petitioner will continue to suffer irreparable harm for which there is no adequate remedy at law. This Court has both the authority and the solemn obligation to interpose itself between an abusive government apparatus and a citizen whose constitutional rights are being violated in real time.

## II.  JURISDICTION AND VENUE

**1.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (claims against the United States), and 28 U.S.C. § 2201–2202 (Declaratory Judgment Act). Constitutional claims arise under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

**2.** Claims against federal agencies are cognizable under the Administrative Procedure Act, 5 U.S.C. § 702, which waives sovereign immunity for actions seeking relief other than money damages against federal agency action that is arbitrary, capricious, or contrary to law.

**3.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Petitioner resides in Omaha, Nebraska, and a substantial portion of the events giving rise to this action occurred within this District.

## III.  PARTIES

**4.** Petitioner BRENT LAMBI is a United States citizen, lifelong Independent voter, real estate developer and investor, civic journalist writing under the banner 'Honesty Reporting,' and pro se litigant. Petitioner maintains a mailing address at P.O. Box 241028, Omaha, Nebraska 68124. Petitioner holds a Bachelor of Arts in Accounting from the University of Northern Iowa and a Juris Doctor from Creighton University School of Law.

**5.** Respondent UNITED STATES OF AMERICA is a sovereign entity subject to suit in equity for injunctive and declaratory relief pursuant to 5 U.S.C. § 702.

**6.** Respondent UNITED STATES DEPARTMENT OF JUSTICE (DOJ) is a federal executive agency headquartered in Washington, D.C., responsible for enforcement of federal law.

**7.** Respondent DRUG ENFORCEMENT ADMINISTRATION (DEA) is an agency operating under the DOJ, which Petitioner alleges has engaged in unlawful surveillance, FOIA obstruction, and interference with Petitioner's legal and civic activities.

**8.** Respondent DEPARTMENT OF HOMELAND SECURITY (DHS) is a federal executive department which Petitioner alleges has engaged in or facilitated targeting of Petitioner.

**9.** Respondent UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) is a federal executive department responsible for administration of federal housing programs and regulation of HUD-participating properties, which Petitioner alleges has engaged in above-standard retaliatory enforcement against the Golden Oaks Apartment property associated with Petitioner's father, Leo Lambi, as a component of the broader targeting campaign directed at Petitioner.

**10.** Respondent MISSOURI HOUSING DEVELOPMENT COMMISSION (MHDC) is a state agency administering federal housing programs in Missouri, whose enforcement actions against Golden Oaks Apartment Petitioner alleges have been influenced by, coordinated with, or directed by federal agents acting in furtherance of the targeting campaign described herein, thereby rendering MHDC's actions attributable to federal authority for purposes of this proceeding.

**11.** Respondents JOHN AND JANE DOES 1–50 are presently unknown federal officers, employees, contractors, informants, and agents who have participated in, directed, supervised, authorized, or ratified the unconstitutional conduct alleged herein. Petitioner reserves the right to identify and name these individuals through discovery.

---

## IV.  STATEMENT OF FACTS

### A.  Petitioner's Protected Civic and Legal Activities

Petitioner has engaged in constitutionally protected activities including: (i) filing multiple Freedom of Information Act (FOIA) requests with the DEA, DOJ, and DHS; (ii) publishing political and civic editorial commentary on matters of public concern through 'Honesty Reporting,' including topics of government accountability, media consolidation, judicial integrity, and federal overreach; (iii) pursuing pro se civil litigation in the Douglas County District Court (Case No. CI 26 1752) and federal courts; and (iv) filing formal complaints and correspondence with United States Senators and federal oversight bodies regarding agency misconduct.

### B.  Pattern of Unlawful Targeting and Interference — Overview

Commencing at a time more precisely ascertainable through discovery, Respondents and their agents, individually and in concert, have engaged in a systematic, multi-year pattern of unlawful conduct directed at Petitioner across multiple states and internationally, including but not limited to the specific incidents described below in Sections C through G. The breadth, coordination, and consistent targeting of Petitioner across different jurisdictions, agencies, financial institutions, and customs authorities is not consistent with coincidence and is instead consistent with an organized, directed targeting program.

- Physical surveillance and stalking by suspected federal agents in the states of Colorado and Missouri;

- Seizure and non-return of medically necessary pharmaceutical shipments, including HIV antiretroviral medications, by United States Customs, blocking delivery from Kansas City, Missouri to Puerto Vallarta, Mexico, on multiple occasions;

- Interference with and obstruction of Petitioner's American Express financial account while Petitioner was located in Mexico, constituting financial coercion and denial of access to funds;

- Dissemination of fraudulent and defamatory information to private parties, including a Berkshire Hathaway real estate agent and her associates, which harmed Petitioner's reputation, business relationships, and active real estate transactions;

- Obstructing and unlawfully withholding responsive records under FOIA requests submitted to the DEA, DOJ, and DHS, in violation of 5 U.S.C. § 552;

- Retaliating against Petitioner for the exercise of First Amendment rights including political speech, journalism, public petitioning, and civic advocacy, in a manner designed to silence, intimidate, discredit, and financially destroy Petitioner.

## C.  Physical Surveillance and Stalking by Suspected DEA Agents — Specific Incidents and Witnesses

On multiple occasions, Petitioner was subjected to deliberate physical surveillance and stalking by individuals he reasonably believes to be agents or contractors of the Drug Enforcement Administration. Two specific incidents are particularly documented, each witnessed by credible third parties who are available to provide testimony.

### Incident 1:  Kansas City International Airport, Kansas City, Missouri

At Kansas City International Airport, Kansas City, Missouri, Petitioner was subjected to what he and a present witness identified as deliberate and coordinated physical surveillance by individuals believed to be DEA agents or federal law enforcement contractors. The surveillance was conducted in a manner inconsistent with ordinary airport activity and consistent with trained counter-surveillance and target-tracking techniques. This incident was witnessed by:

- Jefferson McCully, Kansas City, Missouri — a witness who personally observed the surveillance activity directed at Petitioner at the airport and is available to provide sworn testimony regarding same; and

- Leslie Taylor, Kansas City, Missouri — a witness who likewise personally observed the conduct described herein and is available to provide sworn testimony.

### Incident 2:  Monarch Casino, Black Hawk, Colorado

At the Monarch Casino in Black Hawk, Colorado, Petitioner was again subjected to what he and witness(es) present at the time identified as deliberate and coordinated physical surveillance and stalking by individuals believed to be DEA agents or federal law enforcement contractors. As in the Kansas City incident, the conduct was inconsistent with ordinary patron or visitor behavior and consistent with trained surveillance methodology. This incident was also witnessed by Jefferson McCully and/or Leslie Taylor of Kansas City, Missouri, each of whom observed surveillance activity directed at Petitioner on this occasion and is available to provide sworn testimony.

The appearance of the same or similarly coordinated surveillance operatives in both Missouri and Colorado, on separate occasions and across different states, is not consistent with coincidence or unrelated local law enforcement activity. This pattern is consistent with a coordinated, multi-jurisdictional federal targeting program directed at Petitioner. Petitioner believes that records of these surveillance activities exist within DEA, DOJ, and/or DHS agency files and have been unlawfully withheld in response to Petitioner's outstanding FOIA requests. The testimony of Jefferson McCully and Leslie Taylor constitutes independent third-party corroboration of the targeting conduct alleged herein and will be presented at any evidentiary hearing this Court may schedule.

### D.  Seizure and Non-Return of Medically Necessary Pharmaceuticals by U.S. Customs

On multiple separate occasions, shipments of medically necessary pharmaceutical drugs, including HIV antiretroviral medications and other life-essential prescriptions, were intercepted and seized by United States Customs authorities during transit from Kansas City, Missouri, to Puerto Vallarta, Mexico. Despite lawful documentation accompanying these shipments, the medications were blocked from delivery and were never returned to Petitioner. The repeated nature of these seizures — affecting the same category of life-critical medications on multiple occasions — strongly suggests that these seizures were not random customs enforcement actions but were instead deliberately targeted at Petitioner.

The seizure and non-return of HIV antiretroviral medications is not merely a property deprivation — it constitutes a threat to Petitioner's health and life. Interruption of antiretroviral therapy carries serious and well-documented medical consequences. This conduct, if directed by federal agents as Petitioner alleges, rises to the level of deliberate indifference to serious medical need and cruel and unusual treatment in violation of the Fifth and Eighth Amendment principles applicable to federal action. Petitioner reserves all claims arising from these seizures under the Federal Tort Claims Act and directly under the Constitution.

### E.  Interference with Financial Accounts While Abroad

While Petitioner was residing and traveling in Puerto Vallarta, Mexico, Petitioner experienced persistent, anomalous, and unexplained interference with

and delays in access to his American Express credit and/or charge account. These disruptions occurred repeatedly, were not consistent with ordinary account servicing issues, and had the practical effect of denying Petitioner access to funds and financial services while isolated abroad. Financial interference of this nature, when coordinated with other targeting conduct, is a well-documented tool of government harassment designed to destabilize a target's ability to function independently. Petitioner alleges this conduct was undertaken or procured by Respondents or their agents to coerce, isolate, and financially harm Petitioner in retaliation for his protected activities.

## F.  FOIA Obstruction and Agency Misconduct

Petitioner submitted lawful FOIA requests to the DEA, DOJ, and DHS seeking records pertaining to any files, investigations, surveillance activities, or databases referencing Petitioner's name, businesses, communications, or associates. Rather than respond as required by law, Respondents have engaged in delay, evasion, misrepresentation, and material omission in violation of 5 U.S.C. § 552. The discrepancies discovered in agency responses are consistent with active concealment of an unlawful targeting program. Petitioner has formally notified Senator Pete Ricketts and other federal officials of these discrepancies and has received no adequate remedy. The withholding of these records directly impairs Petitioner's ability to identify the full scope of the targeting program, the names of the individuals responsible, and the legal theories available to vindicate his rights.

## G.  Dissemination of False and Defamatory Information — Interference with Real Estate Transaction and Reputation

In connection with Petitioner's real estate activities, fraudulent and defamatory statements were conveyed to or through Berkshire Hathaway HomeServices real estate agent Mia Applegate and/or her associates, causing direct harm to: (i) Petitioner's reputation and business relationships; (ii) the professional reputation of Ms. Applegate herself, who Petitioner believes was unwittingly used as a conduit for this disinformation; and (iii) the reputation and business interests of Berkshire Hathaway HomeServices, in which Petitioner holds stock as a shareholder of Berkshire Hathaway Inc.

Petitioner alleges that false statements were planted, leaked, or caused to be communicated to Ms. Applegate and/or her associates by persons acting under color of federal authority or at the direction of federal agents, for the purpose of destroying Petitioner's real estate transaction, harming his business relationships, and defaming him in the local and professional community. This conduct is the subject of Petitioner's active civil litigation in Douglas County District Court (Case No. CI 26 1752, Lambi v. Applegate et al.). Petitioner expressly reserves all claims arising from this conduct in both the state and federal proceedings. The use of private parties as instruments of a federal targeting scheme constitutes action under color of law actionable under 42 U.S.C. § 1983 and § 1985.

## H.  Unlawful IRS Audit and Demand for $1,755,400.00 — Suspected Parallel Construction and Targeted Collection Action

In further furtherance of the coordinated targeting campaign described herein, Petitioner has been subjected to an Internal Revenue Service audit resulting in an assessment or demand for payment in the amount of ONE MILLION SEVEN

HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED DOLLARS ($1,755,400.00), accompanied by an unreasonably short deadline for payment and issued without adequate supporting documentation, backup materials, or a meaningful opportunity for Petitioner to review, contest, or respond to the underlying calculations and evidentiary basis for the assessment.

Petitioner alleges that this IRS audit and the resulting demand for $1,755,400.00 are not the product of a legitimate, independently initiated tax enforcement action but are instead a component of the broader federal targeting campaign described in this Petition — or were initiated through the unlawful use of information obtained by other federal agencies through unconstitutional surveillance and targeting, thereafter conveyed to the IRS through a process commonly referred to as 'parallel construction.' The use of illegally obtained information as the basis or trigger for a tax assessment is itself unconstitutional and renders the resulting demand void or voidable. United States v. Janis, 428 U.S. 433 (1976).

Critically, Petitioner was not provided with adequate backup documentation supporting the $1,755,400.00 assessment, nor was he afforded a reasonable time within which to gather records, retain counsel, and formally contest the assessment through the administrative process. An unreasonably compressed payment deadline, issued in the context of an ongoing, coordinated targeting campaign against Petitioner, operates not as legitimate tax enforcement but as a financial weapon designed to strip Petitioner of his assets, destroy his business operations, and silence his civic and legal advocacy before he can obtain judicial relief.

Enforcement of the $1,755,400.00 assessment through levy, lien, seizure, or other collection action prior to full judicial inquiry into whether this assessment is tainted by unconstitutional targeting, parallel construction, or retaliatory motive would render any subsequent judicial relief meaningless and cause immediate, irreversible financial destruction to Petitioner. Petitioner therefore requests that this Court IMMEDIATELY FREEZE all IRS collection activity related to this assessment pending the outcome of these proceedings.

## I.  Property Deprivation and Cumulative Financial Harm

The cumulative and coordinated effect of the foregoing conduct — physical surveillance and stalking in Missouri and Colorado, seizure of life-necessary pharmaceuticals, financial account interference abroad, defamation through real estate channels, FOIA obstruction, a suspected retaliatory IRS assessment of $1,755,400.00, and the HUD/Missouri Housing Commission targeting of the Golden Oaks Apartment property associated with Petitioner's father, Leo Lambi — has caused Petitioner severe and ongoing financial, reputational, physical, and emotional harm. Respondents, directly and through persons acting in concert with or at the direction of federal agents, have taken coordinated actions designed to interfere with Petitioner's real estate holdings, family business relationships, and financial resources. This conduct constitutes an unlawful taking and conversion of property interests in violation of the Fourth and Fifth Amendments to the United States Constitution and operates collectively as an instrument of coercion designed to silence Petitioner's public advocacy and destroy his ability to pursue redress in the courts.

## J.  Retaliatory HUD and Missouri Housing Commission Enforcement Action — Golden Oaks Apartment / Leo Lambi

Petitioner further alleges that the coordinated targeting campaign directed at him has been extended to encompass the interests and property of his father, Leo Lambi, of Webster City, Iowa, through the instrumentality of the United States Department of Housing and Urban Development (HUD) and the Missouri Housing Development Commission (MHDC). Specifically, the Golden Oaks Apartment property — a HUD-participating or HUD-regulated residential housing project associated with Leo Lambi — has been subjected to compliance enforcement actions, inspections, regulatory demands, and/or noncompliance findings that Petitioner alleges exceed the normal standard of HUD regulatory enforcement applied to similarly situated properties and owners.

Petitioner alleges that these above-standard enforcement actions against Golden Oaks Apartment are not the product of legitimate, independently initiated HUD or MHDC regulatory activity but are instead: (i) a component of the broader retaliatory targeting campaign directed at Petitioner, designed to reach Petitioner through his family's property interests; and/or (ii) the result of unlawfully obtained information conveyed by DEA, DOJ, or DHS agents to HUD or MHDC personnel through inter-agency parallel construction designed to obscure the retaliatory origin of the enforcement action. The targeting of a family member's property as a mechanism for pressuring a civil rights litigant is a well-documented tactic of government overreach and constitutes an independent violation of Petitioner's First and Fifth Amendment rights.

The application of compliance standards to Golden Oaks Apartment that materially exceed those applied to similarly situated properties under HUD regulations — without legitimate regulatory basis — constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and amounts to a selective enforcement action motivated by improper retaliatory purpose. Furthermore, subjecting Leo Lambi's property to above-standard enforcement scrutiny as a means of harassing Petitioner through his family constitutes an unconstitutional condition and a violation of the Fifth Amendment's Due Process Clause.

Enforcement of any HUD or MHDC noncompliance findings, compliance deadlines, corrective action orders, fines, penalties, transfer of management proceedings, or mortgage acceleration actions against Golden Oaks Apartment prior to a full judicial inquiry into whether such enforcement was motivated by retaliatory targeting of Petitioner would cause immediate and irreparable harm to Leo Lambi, to the residents of Golden Oaks Apartment who depend upon stable housing, and to Petitioner himself. Petitioner therefore requests that this Court IMMEDIATELY STAY all pending HUD and MHDC enforcement, compliance, and adverse action proceedings against Golden Oaks Apartment pending full judicial review.

## K.  Long-Term Government Electronic Harassment and Directed Psychological Operations — Special Operations Division — Over Two Decades of Documented Harm

For a period exceeding twenty (20) years, Petitioner has been subjected to what he alleges is a sustained program of electronic harassment, psychological

manipulation, and directed human intelligence operations conducted by or at the direction of the United States government's Special Operations Division (SOD) — an interagency unit operating within the DEA and DOJ with documented authority to conduct covert operations against domestic targets. The existence of the Special Operations Division, its authority to conduct electronic surveillance and covert targeting operations, and its history of operating outside normal oversight channels is a matter of public record confirmed by Reuters investigative reporting and Congressional inquiries.

The operations directed at Petitioner have included but are not limited to: the use of electronic and directed-energy means to induce extreme psychological distress; the deliberate manipulation of Petitioner's threat perception through coordinated surveillance, staged incidents, and psychological operations designed to make Petitioner believe his life and the lives of his family members were in imminent danger; and the deployment of human operatives to surveil, follow, and create threatening circumstances around Petitioner in multiple states over the course of many years. This conduct is not theoretical — it caused Petitioner to suffer severe and life-threatening harm on multiple documented occasions, including crisis events that endangered Petitioner's life.

### Incident: Kansas City, Missouri to Des Moines, Iowa — Iowa State Patrol Records

One of the most severe and publicly documented episodes of this targeting campaign occurred approximately three (3) or more years ago and involved a crisis event that originated in Kansas City, Missouri and concluded in Des Moines, Iowa. The Iowa State Patrol has records of this incident. Petitioner alleges that this crisis event was directly precipitated by the electronic harassment and psychological manipulation operations described herein — specifically, operations that caused Petitioner to reasonably believe that his life and the lives of his parents were in imminent and lethal danger. The Iowa State Patrol records of this event constitute independent governmental documentation of the severity and real-world consequences of the targeting campaign directed at Petitioner, and Petitioner expressly requests that this Court compel production of all Iowa State Patrol records relating to this incident as part of any evidentiary inquiry ordered herein.

### Witness: Joyce Busch, Omaha, Nebraska

Joyce Busch of Omaha, Nebraska, witnessed or observed material aspects of a separate episode of the electronic harassment and targeting operations directed at Petitioner. Ms. Busch is identified as a witness available to provide sworn testimony regarding what she observed, which Petitioner alleges is consistent with and corroborative of the pattern of deliberate government-directed targeting described in this section.

### FOIA Records and Anticipated Documentary Evidence

Petitioner alleges that the Freedom of Information Act records sought from the DEA, DOJ, and DHS — provided those records have not been altered, destroyed, or unlawfully withheld — will reveal a documented, ongoing pattern of electronic harassment and covert targeting operations directed at Petitioner spanning multiple decades. The deliberate withholding or alteration of these records would itself constitute a serious federal violation and obstruction of justice, and Petitioner

reserves all claims arising therefrom. The pattern reflected in these records, Petitioner alleges, endangered not only Petitioner himself but members of the general public who were present during targeting-induced crisis events, creating an independent public safety basis for this Court's intervention.

The foregoing conduct — if proven — violates the First, Fourth, and Fifth Amendments to the United States Constitution; the Privacy Act, 5 U.S.C. § 552a; and constitutes actionable intentional infliction of emotional distress and assault under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The multi-decade duration of this program, its life-threatening consequences to Petitioner, and its documented public safety implications demand not merely compensatory relief but immediate cessation of all ongoing operations directed at Petitioner and a full, independent judicial inquiry into the scope and authorization of these activities.

## L.  Government-Facilitated Defamation and Harassment via Facebook — Repeated Publication of False and Injurious Statements

In addition to the defamatory conduct directed through real estate channels described in Section G herein, Petitioner has been subjected to a repeated and ongoing campaign of false, defamatory, and injurious statements published and/or caused to be published on the Facebook social media platform. These publications have included false statements of fact concerning Petitioner's character, integrity, legal standing, business conduct, and personal life, disseminated to the public and to persons within Petitioner's professional and personal networks for the purpose of discrediting, isolating, and reputationally destroying Petitioner.

Petitioner alleges that this Facebook defamation campaign was not the product of spontaneous private conduct but was instead directed, facilitated, encouraged, or orchestrated by federal agents or persons acting under color of federal authority as part of the broader coordinated targeting campaign described in this Petition. The use of social media platforms as instruments of government-sponsored defamation against targeted individuals is a documented technique of federal intelligence and law enforcement operations. The deliberate publication of false and injurious information through social media constitutes defamation per se, a First Amendment violation when government-orchestrated against a private citizen, and an actionable tort under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.

The repeated nature of these Facebook publications — occurring on multiple separate occasions over an extended period — establishes that this was not an isolated incident but a sustained component of the targeting campaign. Each publication constitutes an independent actionable act. The cumulative reputational, professional, and personal harm caused to Petitioner by this sustained social media defamation campaign is severe, ongoing, and irreparable absent injunctive relief. Petitioner preserves all claims for damages arising from each such publication and expressly requests that this Court order the immediate cessation of any further government-directed or government-facilitated defamatory publications concerning Petitioner on any platform.

## M.  Interception, Modification, and Blocking of Electronic Communications — Obstruction of Access to Legal Counsel in the United States and Mexico

Petitioner has been subjected to the systematic interception, alteration, blocking, and suppression of his electronic communications — including email

correspondence — by Respondents or persons acting at their direction. This conduct has occurred repeatedly and has had the deliberate and actual effect of denying Petitioner timely and confidential access to legal counsel in both the United States and Mexico, thereby directly impairing Petitioner's ability to obtain representation, pursue his legal rights, and mount an effective defense and offense in active litigation.

Specifically, Petitioner's email communications with attorneys and legal representatives in the United States and in Mexico have been: (i) intercepted and read without lawful warrant or judicial authorization in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511, and the Fourth Amendment; (ii) modified or altered in transit to change their content, meaning, or tone without Petitioner's knowledge or consent, causing confusion, miscommunication, and breakdown of the attorney-client relationship; and (iii) blocked or suppressed entirely, preventing delivery of communications to and from legal counsel and denying Petitioner the ability to receive legal advice, coordinate legal strategy, and meet legal deadlines.

The interception and modification of attorney-client communications is among the most serious constitutional violations a government can commit against a private citizen. The Sixth Amendment right to counsel and the Fifth Amendment right to due process together prohibit any government interference with privileged attorney-client communications. Weatherford v. Bursey, 429 U.S. 545 (1977). The deliberate blocking of Petitioner's communications with counsel in Mexico — a jurisdiction where Petitioner has resided and maintained legal and business interests — further implicates international treaty obligations and the extraterritorial reach of constitutional protections applicable to United States citizens abroad. The obstruction of access to legal counsel at precisely the moment when Petitioner was pursuing active litigation against federal agencies is not coincidental — it is a calculated act of legal warfare designed to leave Petitioner defenseless.

This conduct is independently actionable under: the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520 (civil remedy); the Stored Communications Act, 18 U.S.C. § 2701 et seq.; Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971); and the Fourth, Fifth, and Sixth Amendments to the United States Constitution. Petitioner requests that this Court order the immediate cessation of all interception, modification, and blocking of Petitioner's electronic communications, and order production of all records of any warrant, court order, national security letter, or other authorization under which any such interception was purportedly conducted.

### Named Instance 1: Husch Blackwell LLP, Kansas City — Communications Transmitted from Mexico, Modified or Blocked to Deny Representation

Petitioner specifically identifies Husch Blackwell LLP, a major national law firm with offices in Kansas City, Missouri, as one of the legal institutions to which Petitioner's communications were directed and which were subjected to the interception and modification operations described above. Critically, these communications were transmitted by Petitioner while he was physically located in Puerto Vallarta, Mexico — meaning the interception of these communications required either the active cooperation of Mexican telecommunications

infrastructure by United States federal agencies, or the deployment of surveillance capabilities with extraterritorial reach, both of which implicate serious violations of international law, treaty obligations, and the constitutional protections extended to United States citizens abroad. Petitioner transmitted communications to the Partner in Charge at the Kansas City office of Husch Blackwell LLP seeking legal representation in connection with one or more of the civil rights, federal misconduct, real estate, and defamation matters described in this Petition.

Petitioner alleges that those communications — in transit from Mexico to Kansas City or prior to or upon receipt by Husch Blackwell — were intercepted and materially modified by federal agents or persons acting at their direction, in a manner specifically designed to: (i) alter the substance, tone, or credibility of Petitioner's legal claims as presented to the firm; (ii) cause Petitioner's communications to appear incoherent, frivolous, or threatening in a manner inconsistent with their actual content; and/or (iii) cause the firm to decline representation of Petitioner, thereby denying Petitioner access to qualified legal counsel at a critical juncture. The practical consequence was that Petitioner was unable to secure representation and was compelled to proceed pro se — precisely the outcome a federal targeting campaign would seek to engineer.

Petitioner does not allege any wrongdoing by Husch Blackwell LLP or its personnel, who are themselves potential victims and unwitting instruments of the government's interception operations. Petitioner expressly names Husch Blackwell LLP as a firm whose records — including all incoming emails, voicemails, correspondence, conflict check records, and internal intake memoranda reflecting the firm's assessment of Petitioner's inquiries — should be subpoenaed and preserved as potential evidence of the interception and modification operations alleged herein.

### Named Instance 2:  Adam Tholen, Kansas City — Communications Blocked or Modified

Petitioner further identifies Adam Tholen of Kansas City as an additional individual to whom Petitioner directed communications that Petitioner believes were intercepted, blocked, or modified by federal agents or persons acting at their direction prior to or upon receipt. Petitioner alleges that his communications to Mr. Tholen — whether in a legal, professional, or personal capacity — were subjected to the same pattern of electronic interference described throughout this section, resulting in the corruption, suppression, or distortion of those communications without Petitioner's knowledge or consent. Petitioner reserves the right to further particularize the nature and content of these communications and the resulting harm as discovery and FOIA production proceed.

### Pattern of FOIA Denial as Evidence of Systematic Communication Suppression

Petitioner expressly acknowledges that the full scope of the email interception, modification, and blocking campaign directed at him — including the identities of all law firms, attorneys, and individuals whose communications with Petitioner were compromised — cannot be fully known to Petitioner at this time, for the precise reason that every Freedom of Information Act request Petitioner has submitted to the DEA, DOJ, and DHS seeking records of surveillance and

communication monitoring has been denied, delayed, or responded to with material omissions. The systematic denial of FOIA requests is not merely an independent violation of 5 U.S.C. § 552 — it is itself the mechanism by which Respondents have concealed from Petitioner the full extent of the communication interception program directed at him. Petitioner cannot identify what he has been prevented from knowing, and that fundamental asymmetry of information — entirely of Respondents' making — is itself a constitutional injury that this Court is empowered and obligated to remedy through compelled disclosure, independent judicial review of agency records, and the appointment of a Special Master with full access to classified and unclassified agency files referencing Petitioner.

The deliberate modification of a citizen's communications with law firms and counsel for the purpose of causing those firms to refuse representation constitutes one of the most serious and targeted interferences with the right to counsel imaginable. It is not merely a Fourth Amendment violation — it is an assault on the entire adversarial system of justice, designed to ensure that a citizen targeted by the government cannot obtain the professional legal advocacy necessary to challenge that targeting. The cumulative effect of this systematic sabotage of Petitioner's attorney-client communications has been to render Petitioner functionally unable to retain counsel for matters directly adverse to the federal government — an outcome that is not accidental but is the precise intended result of the targeting program.

### 2017 Kansas City, Missouri — 3943-3945 Main Street — Government-Induced Crisis Resulting in Criminal Matter

In 2017, at or near 3943-3945 Main Street, Kansas City, Missouri, Petitioner was involved in an incident that resulted in a criminal charge or matter involving an armed act. Petitioner expressly alleges and avers that this incident was not the product of any voluntary, deliberate, or freely willed criminal intent on his part, but was instead the direct, proximate, and foreseeable result of the electronic torture, harassment, and psychological manipulation operations directed at Petitioner by or at the direction of the Special Operations Division and related federal agencies, as described throughout this Petition. At the time of this incident, Petitioner was in a state of severe psychological distress induced by the electronic targeting operations described herein, which caused Petitioner to perceive threats to his life and safety that were directly manufactured or amplified by those operations.

The 2017 Main Street incident is not cited in this Petition as an admission of criminal culpability. To the contrary, it is offered as one of the most concrete and documented examples of the catastrophic, life-altering harm that the government's electronic targeting and psychological manipulation program has inflicted upon Petitioner. When a government program of electronic harassment and psychological operations causes a citizen to commit acts he would not otherwise have committed, the government bears direct legal responsibility for those consequences. The doctrine of outrageous government conduct — recognized by the United States Supreme Court in United States v. Russell, 411 U.S. 423 (1973), and its progeny — provides that government conduct which is so outrageous as to violate fundamental fairness may constitute a complete defense or basis for dismissal of resulting criminal charges, and may independently ground civil liability.

Furthermore, the government's use of electronic targeting operations to induce a citizen into conduct that results in criminal prosecution — whether

deliberately or through reckless disregard for the consequences — constitutes a form of government-manufactured criminal liability that is fundamentally incompatible with the Due Process Clause of the Fifth Amendment. A government that secretly manipulates a citizen's psychological state through directed electronic operations until he commits an act, and then allows or facilitates his prosecution for that act, has weaponized the criminal justice system as an instrument of targeting — which is among the most egregious civil rights violations this Court could be asked to redress.

Petitioner further notes that to the extent the 2017 incident resulted in any conviction, plea, or criminal record, Petitioner expressly reserves all rights to seek post-conviction relief, expungement, or vacatur on the grounds that: (i) the act was caused by government-induced psychological manipulation; (ii) the existence of the electronic targeting program was not disclosed to Petitioner's defense counsel at the time, constituting a Brady violation; and (iii) any FOIA records confirming the targeting program's existence and its operation at the time of the 2017 incident constitute newly discovered evidence within the meaning of applicable post-conviction relief standards. Petitioner requests that this Court's compelled FOIA production and records disclosure orders encompass all agency records bearing on the status and operation of electronic targeting activities directed at Petitioner in Missouri in 2017, including at or near 3943-3945 Main Street, Kansas City.

### Two Decades of Direct Agency Outreach — DEA, DOJ, and DHS Websites and Portals — No Assistance Rendered

For a period spanning approximately two decades, Petitioner has repeatedly and persistently sought assistance, intervention, and relief directly from the very agencies he alleges are responsible for the targeting campaign described in this Petition — the Drug Enforcement Administration, the United States Department of Justice, and the Department of Homeland Security — by submitting communications, complaints, and requests for assistance through each agency's official websites, online contact portals, tip lines, and complaint mechanisms. On each and every such occasion, across two decades of outreach, Petitioner received no meaningful assistance, no acknowledgment of the substance of his complaints, no referral for investigation, and no relief of any kind.

This twenty-year record of direct agency outreach is legally significant on multiple independent grounds. First, it constitutes conclusive evidence of exhaustion of administrative remedies to the extent any such exhaustion is required prior to seeking judicial relief — Petitioner has not sat on his rights but has actively and persistently sought redress through every available administrative channel for two full decades. Second, the complete and unbroken absence of any agency response over a twenty-year period is not consistent with bureaucratic neglect or ordinary administrative backlog — it is consistent with a deliberate policy of non-response specifically applied to Petitioner's complaints, which is itself evidence of the coordinated targeting program alleged herein. Third, each unanswered complaint constitutes a separate, documented act of deliberate indifference by the agencies to the constitutional violations being reported to them.

The agencies' failure to respond to or investigate Petitioner's complaints over two decades is particularly egregious given that Petitioner was, in each such communication, reporting to those agencies the very targeting, surveillance,

harassment, and civil rights violations that this Petition now places before this Court. The government cannot simultaneously be the instrument of Petitioner's harm, the repository of Petitioner's complaints about that harm, and the systematic denier of relief from that harm — and then claim before this Court that Petitioner has failed to exhaust his remedies or has unreasonably delayed in seeking judicial relief. The twenty-year record of unanswered agency outreach demonstrates with finality that no administrative remedy exists or has ever been available to Petitioner, and that this Court is the only forum capable of providing the relief to which Petitioner is entitled.

## N.  Additional Incidents of Unlawful Targeting — General Allegation of Pattern and Practice

The specific incidents identified in Sections C through M of this Petition are not exhaustive. Petitioner alleges that the unlawful targeting, surveillance, harassment, psychological operations, property interference, and civil rights deprivations described herein are representative of a broader, continuous, and systematic pattern and practice of government misconduct directed at Petitioner spanning a period of more than two decades. Additional incidents of the same general nature and character as those described herein — including but not limited to additional episodes of physical surveillance, financial interference, electronic harassment, defamation, covert psychological operations, and coordinated interference with Petitioner's business, legal, civic, and personal activities — occurred during this same period at times, locations, and through means presently known to Respondents and to be further identified through discovery, FOIA production, and the recovery of documentary evidence.

The existence of this broader pattern, even where individual incidents are not yet fully particularized, is legally significant and properly before this Court. A pattern and practice of unconstitutional government conduct — as distinct from isolated incidents — supports both a stronger showing of likelihood of success on the merits and a stronger showing of irreparable harm, as it demonstrates that absent judicial intervention the targeting will continue. City of Los Angeles v. Lyons, 461 U.S. 95 (1983); Monell v. Department of Social Services, 436 U.S. 658 (1978). Petitioner expressly relies on this pattern and practice as an independent basis for the injunctive and protective relief sought herein.

## O.  Formal Reservation of Rights — Trauma-Suppressed Memories, Emerging Evidence, and Right to Amend

Petitioner hereby expressly reserves all rights, claims, and causes of action arising from incidents of unlawful government targeting, harassment, surveillance, electronic operations, property deprivation, and civil rights violations that are not specifically identified in this Petition by reason of trauma-induced memory suppression consistent with Post-Traumatic Stress Disorder (PTSD), a clinically recognized condition that is a direct and foreseeable consequence of the prolonged, life-threatening, and psychologically devastating targeting campaign described herein. Courts have consistently recognized that PTSD and trauma-related memory suppression can toll statutes of limitations and justify amendment of pleadings under the discovery rule and equitable tolling doctrines. Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986); see also Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997) (discovery rule tolling).

It is Petitioner's good-faith belief that additional incidents of unlawful government conduct directed at him have occurred that are not currently accessible to his conscious recollection as a result of trauma-induced suppression caused directly by the targeting operations described herein. As FOIA records are produced, as discovery proceeds, as therapeutic process and time permit, and as additional witnesses and documentary evidence are identified, Petitioner anticipates that a more complete factual record will emerge. Petitioner expressly reserves the right to seek leave to amend this Petition pursuant to Fed. R. Civ. P. 15(a) to incorporate additional incidents, witnesses, and claims as they become known, and requests that this Court liberally construe this reservation in light of the extraordinary circumstances presented — namely, that the very trauma suppressing Petitioner's memory of these events was itself caused by the Respondents' unconstitutional conduct.

Nothing in this Petition shall be construed as a waiver of any claim, right, cause of action, or remedy arising from any incident of unlawful government conduct directed at Petitioner that is not specifically identified herein. Petitioner's inability to fully particularize all incidents at this time is itself a direct consequence of the harm inflicted by Respondents, and Respondents shall not be permitted to benefit from that harm by asserting waiver, laches, or statute of limitations defenses against claims whose suppression was caused by their own unconstitutional conduct.

## V. LEGAL STANDARD FOR INJUNCTIVE RELIEF

A court may issue a temporary restraining order or preliminary injunction upon a showing of: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction may cause the opposing party; and (4) that the injunction is in the public interest. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981). Where constitutional rights are at stake, the likelihood of success and irreparable harm factors often merge, as the loss of constitutional freedoms 'for even minimal periods of time' constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976).

## VI. ARGUMENT

### A. Petitioner Is Substantially Likely to Succeed on the Merits

Petitioner's claims rest on well-established constitutional and statutory foundations. The First Amendment prohibits government retaliation against citizens for protected speech, petition, and press activity. Hartman v. Moore, 547 U.S. 250 (2006). The Fourth Amendment prohibits warrantless surveillance and seizure of property. The Fifth Amendment's Due Process Clause prohibits deprivation of life, liberty, or property without due process. The pattern of FOIA obstruction is independently actionable under 5 U.S.C. § 552(a)(4)(B). The coordinated effort to deprive Petitioner of property and suppress his speech in concert with private parties constitutes a conspiracy actionable under 42 U.S.C. § 1985.

### B.  Petitioner Will Suffer Irreparable Harm Absent Relief

The ongoing suppression of First Amendment rights constitutes per se irreparable harm. Elrod v. Burns, supra. The continued interference with Petitioner's property interests, business operations, and active litigation cannot be adequately compensated by monetary damages alone. The chilling effect of government surveillance and retaliation on Petitioner's journalistic and civic activities is ongoing and worsening. Immediate injunctive relief is the only adequate remedy.

### C.  The Balance of Harms Favors Petitioner

The government suffers no cognizable harm from being ordered to comply with the Constitution. The harm to Petitioner from the continuation of unconstitutional targeting vastly outweighs any administrative burden a protective order may impose on Respondents. Courts have consistently held that the government has no legitimate interest in conducting or permitting unconstitutional activity.

### D.  The Public Interest Strongly Favors Relief

The public interest is always served by protection of constitutional rights. Nken v. Holder, 556 U.S. 418, 435 (2009). The spectacle of a federal government targeting, surveilling, and financially harassing a private citizen to silence civic journalism and legal advocacy strikes at the foundations of democratic governance. This Court's interposition of a protective order vindicates not only Petitioner's rights but the rights of all citizens who depend on the First Amendment's promise.

---

### VII.  PRAYER FOR RELIEF — PROPOSED TERMS OF FEDERAL PROTECTIVE ORDER

WHEREFORE, Petitioner respectfully requests that this Court issue a Federal Protective Order, Temporary Restraining Order, and Preliminary Injunction commanding Respondents, their officers, agents, employees, contractors, successors, and all persons acting in active concert or participation with them, as follows:

**A.**   CEASE AND DESIST from any and all surveillance, monitoring, tracking, investigation, or data collection targeting Petitioner Brent Lambi, his communications, residences, business operations, legal activities, or associates, except pursuant to a lawfully issued judicial warrant supported by probable cause and served upon Petitioner;

**B.**   IMMEDIATELY FREEZE and STAY all Internal Revenue Service collection activity, enforcement action, levy, lien, bank account seizure, property seizure, wage garnishment, asset attachment, and/or referral for criminal investigation arising from or related to the IRS audit resulting in the assessment or demand for payment of ONE MILLION SEVEN HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED DOLLARS ($1,755,400.00), pending: (i) full judicial inquiry into whether said audit was initiated, directed, informed, or influenced by unconstitutional targeting, retaliatory motive, or parallel construction using information unlawfully obtained by the DEA, DOJ, DHS, or any other federal agency; (ii) production to Petitioner of all backup documentation, workpapers, source records, and inter-agency

communications underlying the $1,755,400.00 assessment; and (iii) a reasonable opportunity for Petitioner to review, respond to, and formally contest said assessment through both administrative and judicial channels;

**C.** ORDER the Internal Revenue Service and all related federal agencies to PRESERVE all records, communications, referral documents, workpapers, audit files, and inter-agency correspondence relating to the $1,755,400.00 assessment of Petitioner Brent Lambi, and to produce a full inventory of such records to this Court within fourteen (14) days;

**D.** CEASE AND DESIST from any interference, obstruction, delay, or retaliation related to Petitioner's active FOIA requests, federal complaints, civil litigation, or communications with elected officials, and to IMMEDIATELY produce all lawfully requested FOIA records without further delay;

**E.** CEASE AND DESIST from any direct or indirect action designed to deprive, convert, encumber, damage, or interfere with Petitioner's real property, personal property, business interests, financial accounts, or income streams;

**F.** CEASE AND DESIST from any retaliatory action, harassment, intimidation, or adverse action against Petitioner on account of his protected First Amendment activities, including but not limited to his editorial writing, civic journalism, public petitioning, and pro se legal advocacy;

**G.** PROHIBIT all federal agencies, officers, employees, and agents from sharing, disseminating, or communicating any derogatory, false, or prejudicial information concerning Petitioner to third parties, including private litigants, employers, financial institutions, or media organizations, without prior judicial authorization;

**H.** ORDER Respondents to preserve all records, files, databases, communications, and documents referencing Petitioner Brent Lambi pending the resolution of this litigation;

**I.** ORDER Respondents to file with this Court, within fourteen (14) days, a sworn declaration identifying all federal files, investigations, databases, surveillance activities, and inter-agency communications referencing Petitioner Brent Lambi for the period from January 1, 2015, to present;

**J.** APPOINT a Special Master or independent federal monitor to oversee Respondents' compliance with this Order and to receive and investigate any report of violation by Petitioner;

**K.** AWARD Petitioner his costs, expenses, and reasonable attorney fees as authorized by 28 U.S.C. § 2412 and other applicable law;

**L.** IMMEDIATELY STAY all pending enforcement, compliance, corrective action, penalty, fine, transfer of management, mortgage acceleration, and any other adverse action proceedings initiated or maintained by the United States Department of Housing and Urban Development (HUD) and/or the Missouri Housing Development Commission (MHDC) against the Golden Oaks Apartment property associated with Leo Lambi, Webster City, Iowa, pending: (i) full judicial inquiry into whether said enforcement actions were initiated, directed, accelerated, or influenced by retaliatory targeting of Petitioner Brent Lambi; (ii) production of all HUD and MHDC inspection reports, correspondence, inter-agency communications, compliance files, and enforcement records related to Golden Oaks Apartment; and (iii) a comparative

analysis by an independent reviewer of the compliance standards applied to Golden Oaks Apartment versus those applied to similarly situated HUD-regulated properties in the same region and program category; and

**M.** IMMEDIATELY CEASE AND DESIST all electronic surveillance, directed psychological operations, human intelligence targeting, and any and all covert activities conducted by or at the direction of the Special Operations Division (SOD) or any other federal unit, task force, or contractor directed at Petitioner Brent Lambi, his family members, or his associates; and ORDER Respondents to file with this Court a sworn declaration confirming the cessation of all such operations;

**N.** ORDER the immediate production and preservation of all SOD, DEA, DOJ, DHS, and related agency records pertaining to any covert targeting, electronic surveillance, psychological operations, or directed harassment program involving Petitioner Brent Lambi; ORDER production of all Iowa State Patrol records pertaining to the Kansas City-to-Des Moines incident referenced herein; and ORDER that no such records be altered, destroyed, or withheld pending judicial review under penalty of contempt;

**O.** IMMEDIATELY CEASE AND DESIST all government-directed, government-facilitated, or government-orchestrated publication, dissemination, or promotion of false, defamatory, or injurious statements concerning Petitioner on Facebook or any other social media platform; ORDER Respondents to identify all accounts, individuals, and agencies involved in or directed to publish defamatory content about Petitioner; and ORDER preservation of all records, communications, and authorizations related to any such social media operations directed at Petitioner;

**P.** IMMEDIATELY CEASE AND DESIST all interception, monitoring, modification, blocking, suppression, or interference with Petitioner's electronic mail and digital communications — including without limitation all communications with legal counsel in the United States and Mexico — in violation of the Fourth, Fifth, and Sixth Amendments, the Electronic Communications Privacy Act (18 U.S.C. § 2511), and the Stored Communications Act (18 U.S.C. § 2701); ORDER Respondents to produce to this Court within fourteen (14) days a complete accounting of all warrants, court orders, national security letters, or other legal process under which any interception, monitoring, or blocking of Petitioner's communications was authorized or conducted; and ORDER that all such interception cease immediately and unconditionally;

**Q.** ORDER the issuance of subpoenas or judicial directives to: (i) Husch Blackwell LLP, Kansas City, Missouri, directing preservation and production to this Court of all communications received from or sent to Petitioner Brent Lambi, including emails transmitted from Mexico, voicemails, written correspondence, conflict check records, and all internal intake memoranda reflecting the firm's handling of Petitioner's inquiries; (ii) Adam Tholen, Kansas City, directing preservation and production of all communications sent to or received from Petitioner; and (iii) any additional law firms, attorneys, and individuals identified through discovery as having received communications from Petitioner that were subjected to interception or modification — all for the purpose of determining whether said communications were intercepted, modified, or manipulated prior to receipt; and ORDER that the systematic denial of Petitioner's FOIA requests shall not be used as a defense to, or basis for limiting, the scope of any discovery ordered herein; and

**R.** GRANT such other and further relief as this Court deems just and proper to vindicate Petitioner's constitutional rights and to prevent ongoing and future irreparable harm.

---

## VIII. VERIFICATION

I, Brent Lambi, being duly sworn, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Petitioner in the foregoing action; that I have read the foregoing Petition and know its contents; that the facts alleged are true and correct to the best of my knowledge, information, and belief; and that this Petition is not filed for any improper purpose.

Executed this _____ day of _MARCH_ , 2026, at Omaha, Nebraska.

**BRENT LAMBI**
*Petitioner, Pro Se*
P.O. Box 241028
Omaha, Nebraska 68124
*Appearing Without Counsel*

---

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _MARCH_, 2026, a true and correct copy of the foregoing Petition for Emergency Temporary Restraining Order, Preliminary Injunction, and Federal Protective Order was served upon the following parties by certified U.S. mail, return receipt requested, and/or by electronic filing through the Court's CM/ECF system:

United States Attorney's Office, District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102

U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530

Drug Enforcement Administration, Office of Chief Counsel
8701 Morrissette Drive
Springfield, Virginia 22152

Department of Homeland Security, Office of General Counsel

2707 Martin Luther King Jr. Ave SE
Washington, D.C. 20528

Internal Revenue Service, Office of Chief Counsel
1111 Constitution Avenue NW
Washington, D.C. 20224

U.S. Dept. of Housing and Urban Development, Office of General Counsel
451 7th Street SW
Washington, D.C. 20410

Missouri Housing Development Commission
920 Main Street, Suite 1400
Kansas City, Missouri 64105


**BRENT LAMBI**
*Petitioner, Pro Se*
P.O. Box 241028
Omaha, Nebraska 68124
*Appearing Without Counsel*

| JS 44 (Rev. 10/20) | CIVIL COVER SHEET |
|---|---|

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS

**BRENT LAMBI**

(Pro Se Plaintiff / Petitioner)

## DEFENDANTS

**DRUG ENFORCEMENT ADMINISTRATION (DEA); U.S. DEPT. OF JUSTICE (DOJ); DEPT. OF HOMELAND SECURITY (DHS); FBI; et al.**

**(b)** County of Residence of First Listed Plaintiff
**DOUGLAS COUNTY, NEBRASKA**

**(c)** Attorneys (Firm Name, Address, and Telephone Number)
**Brent Lambi, Pro Se**
**PO Box 241028, Omaha, NE 68124**
**Ph: (402) 619-7074 | Honestyreporting@outlook.com**

County of Residence of First Listed Defendant **WASHINGTON, D.C.**
(IN U.S. PLAINTIFF CASES ONLY)

Attorneys (If Known)
**U.S. Attorney, District of Nebraska & Attorney General of the United States**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question
- ☐ 4 Diversity of Citizenship

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff)

(For Diversity Cases Only — N/A for Federal Question)
This action is based on FEDERAL QUESTION (5 U.S.C. § 552).
Citizenship/Diversity does not apply.

## IV. NATURE OF SUIT (Place an "X" in One Box Only) — Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | 310 Airplane | 625 Drug Related | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 315 Airplane Product | 690 Other | 423 Withdrawal | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 320 Assault/Libel | | | |
| 140 Negotiable Instr | 330 Federal Employers | LABOR | PROPERTY RIGHTS | 400 State Reapport. |
| 150 Recovery Overpay | 340 Marine | 710 Fair Labor Stds | 820 Copyrights | 410 Antitrust |
| 151 Medicare Act | 345 Marine Product | 720 Labor/Mgmt Rel | 830 Patent | 430 Banks & Banking |
| 152 Recovery Default | 350 Motor Vehicle | 740 Railway Labor | 840 Trademark | 450 Commerce |
| 153 Recovery Overpay | 355 Motor Vehicle Prod | 751 Family/Medical | 880 Defend Trade | 460 Deportation |
| 160 Stockholders | 360 Other Personal | 790 Other Labor | | 470 Racketeer |
| 190 Other Contract | 362 Personal Injury- | 791 Empl. Ret. Inc. | SOCIAL SECURITY | 480 Consumer Credit |
| 195 Contract Prod. | Med Malpractice | | 861 HIA (1395ff) | 485 Telephone Consumer |
| 196 Franchise | 365 Personal Injury- | IMMIGRATION | 862 Black Lung (923) | 490 Cable/Sat TV |
| | Prod. Liability | 462 Naturalization | 863 DIWC/DIWW (405(g)) | 850 Securities |
| REAL PROPERTY | 367 Health Care/ | 465 Other Immigration | 864 SSID Title XVI | 890 Other Statutory |
| 210 Land Condemn. | Pharm. Pers. Inj. | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 368 Asbestos Pers. | CIVIL RIGHTS | | 893 Environ. Matters |
| 230 Rent Lease | Injury Prod. | 440 Other Civil Rts | FEDERAL TAX SUITS | 895 Freedom of Info. |
| 240 Torts to Land | PERSONAL PROPERTY | 441 Voting | 870 Taxes (US or Def) | Act [SELECTED] |
| 245 Tort Prod. Liab. | 370 Other Fraud | 442 Employment | 871 IRS Third Party | 896 Arbitration |
| 290 All Other | 371 Truth in Lending | 443 Housing/Accom. | 26 USC 7609 | 899 Admin Proc Act |
| | 380 Other Personal | 445 ADA-Employment | | 950 Constitutionality |
| | 385 Property Damage | 446 ADA-Other | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District
- ☐ 6 Multidistrict Litigation Transfer
- ☐ 8 Multidistrict Litigation Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing:
**5 U.S.C. § 552 (Freedom of Information Act);**
**5 U.S.C. § 552(a)(4)(B); Fed. R. Civ. P. 37**

Brief description of cause:
**Motion to Compel FOIA Compliance by All Federal Agencies; Imposition of Sanctions for Obstruction**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ **Sanctions, Costs, Fees, Daily Fines Per Agency**

CHECK YES only if demanded in complaint:
☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE: _____   DOCKET NUMBER: _____

Note: Plaintiff also has pending state civil matter: **Lambi v. Applegate et al., Case No. CI 26 1752, Douglas County District Court, Nebraska**

DATE: **MARCH 9, 2026**    SIGNATURE OF ATTORNEY OF RECORD / PRO SE PLAINTIFF: **Brent Lambi, Pro Se**

PO Box 241028 | Omaha, NE 68124 | (402) 619-7074 | Honestyreporting@outlook.com

FOR OFFICE USE ONLY: RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

Nature of Suit Code Selected: 895 — Freedom of Information Act | Case: Lambi v. DEA, DOJ, DHS et al. | U.S. District Court, District of Nebraska